**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE ) | |
| DENISE MEGAN BRONSDON, ) | |
| DEBTOR ) | CHAPTER 7 |
| _____ ) | CASE NO. 07-14215-JR |
| DENISE MEGAN BRONSDON, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | AP. NO. 08-1062 |
| ) | |
| EDUCATIONAL CREDIT ) | |
| MANAGEMENT CORPORATION, ) | |
| ) | |
| Defendant ) | |

**MEMORANDUM OF DECISION**

This matter came before the Court for a trial on a complaint alleging that certain student loans owed by Denise Megan Bronsdon ("Debtor") to Educational Credit Management Corp. ("ECMC") are dischargeable insofar as the repayment of such loans constitutes an undue hardship pursuant to § 523(a)(8) of the Bankruptcy Code. For the reasons set forth herein, the Court finds that repayment of the Debtor's student loans would impose an undue hardship and judgment will enter for the Debtor accordingly.

**Facts**

The Debtor is a 64 year old unmarried woman, and was the only witness who testified at trial. The Debtor was previously married to a farmer and would occasionally operate a tractor and run the family farm stand. The Debtor also worked as a secretary at some point. The Debtor went to Wellesley College and in 1994 received a BA with a concentration in English. She was 50 years old when she received this degree and her initial attempts at finding employment were fruitless. To the extent her undergraduate education was financed with student loans, they were fully paid and are not the subject of this proceeding.

The Debtor eventually found a job with Robertson Cushman working as a legal secretary in the patent prosecution field in 1996. Her beginning annual salary was in the $40,000 range. She worked at Robertson Cushman for approximately one year. She then went on to work as a legal secretary at Wolf Greenfield, where her salary was approximately the same.

She left Wolf Greenfield after one year and began working as a legal secretary at Fish & Richardson because one of the patent attorneys she worked for at Wolf Greenfield had begun working for Fish & Richardson. At Fish & Richardson, the Debtor's salary increased to $49,0000 a year. After working at Fish & Richardson for 3 ½ years, the Debtor took a job with Ropes & Gray because it had the potential for growth. The Debtor was terminated by Ropes & Gray after six months because she allegedly had made the partner that she worked for look bad at a meeting. The Debtor was earning $57,000 a year at Ropes & Gray. Finally, the Debtor worked at Nutter, Mclennan & Fish for six months earning $57,000 a year.

The Debtor worked full-time at all of the law firms and her job duties involved completing paperwork necessary to submit and prosecute patent applications to the United States Patent and Trademark Office. She would also contact inventors when problems arose and speak with corporate officers to inquire about assignments.

After she left Nutter, Mclennan & Fish, which was at some point during 2001, she was unable to find another job and decided to go to law school with the idea of eventually opening her own law practice. The Debtor formally enrolled at Southern New England School of Law in the fall of 2002. The Debtor graduated in the top half of her class in December of 2005 at the age of 61. To finance this education, the Debtor took out student loans, which were subsequently assigned to ECMC. As of September 8, 2008, the total amount due on those loans was $82,049.45.

2

Since graduating from law school, the Debtor worked briefly as a receptionist. She then worked briefly as a temporary patent prosecution legal secretary at Edwards, Angel, Palmer and Dodge and at Mintz Levin. She earned between $20 and $23 per hour at these jobs.

The Debtor has taken the bar exam three times and failed each time. After failing for the second time, she testified that she sought treatment for medical conditions that had become increasingly debilitating. The Debtor also spent $1,300 on an essay course in preparation for her third attempt. She testified that she pushed herself too hard studying for the bar exam and had a physical response that almost caused her to faint when she took it for the third time. The Debtor has never come within striking distance of passing the bar exam, failing by approximately 45 points the first time and 33 points the third time.[1] The Debtor does not plan on taking the bar exam a fourth time because she has not come close to passing and because she has run out of funds.

The Debtor testified that she is currently unable to find gainful employment. Last summer, she spoke with a few employment agencies who informed her that the job market was completely "flat." The Debtor was told that there were not even temporary jobs available. The last time she looked into finding a job was in the late fall when she called one of the employment agencies. Prior to the fall, she was continually going on interviews and making phone calls to prospective employers. She looked for *any kind* of secretarial, receptionist, or contract manager work.

As the Debtor has been unable to find employment, she has looked into to earning income through other means. First, she expanded a law school paper into a novel. She has approached publishers who have expressed little interest. She has also discussed this novel with

---

[1] The Debtor did not testify as to how many points she failed by on her second attempt, but she did testify that she got a bit closer each time she took it.

3

other writers who have attempted to help her revise it to generate some interest. One publisher was at first interested in the novel, but ultimately passed. The Debtor has also submitted the necessary paperwork to apply for a patent for an invention she developed, a device that would strap onto a hospital bed and prevent unwanted exposure of patients. She researched databases to ensure that her invention is innovative and wrote the specification.[2] She has yet to receive a response to the application.

The Debtor has been concentrating on her writing as of late because she is thinking of writing a second novel. She has also unsuccessfully attempted to find a literary agent to represent her. Finally, the Debtor has looked into the possibility of opening up her own website. The website would involve commentary on the news and current events. The Debtor contacted a web provider to look into the cost of creating such a website. The website idea has not progressed.

Despite all of the Debtor's efforts, she is currently earning no income aside from the $946 per month that she currently receives from Social Security. The Debtor owns no real property and she was recently living in the basement of her daughter and son-in-law's home. She had a disagreement with her son-in-law and was forced to move. She is currently living at her 92 year old father's house until the house is sold.[3] Her bedroom in this house is in the "den." When the house is sold, she will have nowhere to go. Finally, the Debtor testified to her list of monthly living expenses at trial, which illustrates that she is barely making ends meet while living far from an extravagant lifestyle.[4]

## Discussion

---

[2] She utilized the experience she acquired as a patent prosecution legal secretary to complete these steps.
[3] There was no evidence whatsoever of any expectation of an inheritance.
[4] The Debtor currently does not pay for rent, electricity, water, or heat. The following is a list of her monthly expenses: cell phone- $12, cable and internet- $99, car insurance- $82, groceries- $300, outside meals- $10, clothing- $50, dental- $50, excise tax- $7.50, gasoline- $140, car maintenance- $8.50, charity- $12, recreation- $25, and hairdresser- $30. These figures total $826. *See* Exhibit F.

4

To receive a discharge of her student loans, the Debtor must prove that the repayment of the loans will impose an undue hardship on her by a preponderance of the evidence. 11 U.S.C. § 523(a)(8). There are two tests generally employed by the courts to determine whether repayment of student loans will impose an undue hardship— the totality of the circumstances test and the *Brunner* test. *In re Denittis*, 362 B.R. 57, 63 (Bankr. D. Mass. 2007). This Court employs the totality of the circumstances test. ECMC again invites the Court to adopt the *Brunner* test. The Court declines this invitation and will continue to use the totality of the circumstances test, as permitted in the First Circuit.

Under the totality of the circumstances test, the Debtor must prove by a preponderance of the evidence, that (1) her past, present, and reasonably reliable future financial resources; (2) her and her dependents' reasonably necessary living expenses, and; (3) other relevant facts or circumstances particular to the Debtor's case are such that excepting the student loans from discharge will prevent the Debtor from maintaining a minimal standard of living, even with the advantage of a discharge of her other pre-petition debts. *In re Dolan*, 256 B.R. 230, 238 (Bankr. D. Mass. 2000) (citing *In re Kopf*, 245 B.R. 731, 739 (Bankr. D. Me. 2000)). A finding of economic hopelessness or poverty is not required to meet the undue hardship standard. *In re Gotay*, 258 B.R. 531, 533 (Bankr. D. Mass. 2001).

The Court will first evaluate the Debtor's reasonably necessary living expenses. The Debtor's currently monthly income is $946 that she receives from Social Security. The Debtor's exhibit indicates that her income exceeds her expenses by $120 per month. The Court finds that the Debtor's expenses are more than reasonable, and perhaps unreasonable from the Debtor's standpoint. The reasonableness of the Debtor's expenses was emphasized by the fact that ECMC only cross-examined the Debtor about one of her expenses— the $99 that she spends on

5

cable and internet. However, the Debtor thoroughly and adequately explained this expense. She uses the internet to look for jobs, research for her second novel, and submit her novel to publishers. *See In re Pollard*, 306 B.R. 637, 645 (Bankr. D. Minn. 2004) (allowing internet expense where internet was used to search for and apply for jobs). She uses the cable television to track Senate hearings that would be an important part of the website that she has thought about developing. Although a good faith repayment effort is not necessarily a determinative factor, *Denittis*, 362 B.R. at 63, the Debtor's testimony about the cable and internet expense is evident of the good faith efforts she has undertaken to earn the income necessary to repay her student loans.

The Court also notes that the Debtor's expenses warrant an upward adjustment. The Debtor listed car maintenance at $8.50 per month, but she excluded the $723.75 that she spent in September on brake repair. Car maintenance should undoubtedly include brake work, so the Debtor's true monthly car maintenance figure is adjusted to $68.81. *See In re Mitcham*, 293 B.R. 138, 145 (Bankr. N.D. Ohio 2003) (considering fact that some of Debtor's expenses were stated too low when evaluating Debtor's ability to pay student loans). The Debtor's vehicle expenses are also likely to increase going forward as the Debtor is currently driving a 1996 Cadillac Deville. With this adjustment, the Debtor's monthly excess is $59.69. Even with the temporary benefit of living rent free, the Debtor's financial status is flirting with hopelessness.

The Debtor testified that she can only live in her father's home (her father is living with her brother) until the house is sold. At that point, the Debtor will have to pay for her own housing. Even if the Court were to assign a modest $800 per month figure to the cost of rent, heat, and electricity that the Debtor currently does not pay—which is probably not a realistic figure— the Debtor's expenses would far exceed her income. Such a figure captures a more

6

accurate depiction of the Debtor's reasonably necessary living expenses as she candidly testified that her current living situation is only temporary. *See In re Kelly*, 312 B.R. 200, 207 (B.A.P. 1st Cir. 2004) (noting that "the Debtor's rent may increase because of her landlord's plan to sell the building where she resides" in necessary living expenses analysis). Consequently, the Debtor's reasonably necessary living expenses prevent the Debtor from repaying her student loans without suffering an undue hardship.

The Debtor testified that she is aware of the Ford Program. If the Debtor were to participate in the program, her current financial status would not require monthly payments. ECMC argues that repayment of the student loans would not cause an undue hardship because the Debtor would not currently be required to make monthly payments under the program. The Court refers the parties to *Denittis*, 362 B.R. at 64-65, where this Court explained the frailties of this argument. In short, if the Debtor were to participate in the Ford Program, the student loan forgiveness at the conclusion of her participation in the program would result in a tax liability that would subject the Debtor's Social Security benefits to garnishment. To accept such an argument would promote a vicious cycle that could leave the Debtor in a financial state much more desperate than the one she is currently enduring.

Next, the Court turns to the Debtor's past, present, and reasonably reliable future financial resources. The Debtor's evidence on this factor is comprised of the struggles that she has encountered in attempting to procure employment and sell her novel. With respect to past financial resources, the Debtor was able to earn annual salaries of $40,000 to $57,000 working as a legal secretary in the patent prosecution field. In the context of the Debtor's future employment prospects, the Court assigns very little weight to this employment history as it took place between the years of 1996 and 2001 when the Debtor was 52-57 years old. *See In re*

*Reynolds*, 303 B.R. 823, 837 (Bankr. D. Minn. 2004) (stating that it is the bankruptcy court's province to assign the "appropriate weight" individually to the unique facts and circumstances when conducting an undue hardship analysis).

Meanwhile, the Debtor's current inability to procure employment or otherwise earn income is well established. The Debtor testified to extraordinary attempts that she has made to better her financial situation. The Debtor has undertaken a broad employment search looking for "any kind" of secretarial, receptionist, or contract manager positions. *See In re Mallinckrodt*, 274 B.R. 560, 568 (S.D. Fla. 2002) (noting importance of undertaking a broad job search when attempting to show undue hardship). She has continually gone on interviews and made phone calls to employers. She has used at least two headhunters and followed up with them on multiple occasions. Despite these efforts, the Debtor remains unemployed and her sole source of income continues to be the $946 per month that she receives from Social Security. ECMC offered no evidence to refute the Debtor's testimony that she has been unable to find a job. The Court finds the Debtor credible, and because ECMC did not present any contradictory evidence, the Court accepts the Debtor's testimony on this point. *See Kelly*, 312 B.R. at 207 ("There is nothing in the record to suggest that the Debtor would have been successful had she sought employment in a different area. . . . Similarly, no evidence was presented indicating that she had passed up opportunities in the legal field.").

Furthermore, the Debtor did not limit her attempts at earning income to applying for employment. The Debtor has written and attempted to sell a novel. She has also filed an application for a patent. The Debtor testified that she currently spends most of her time concentrating on writing because she is considering the possibility of writing a second novel. Finally, she has looked into the possibility of developing a news commentary website. The

8

Debtor has unquestionably made a good faith effort to earn the income necessary to repay her student loans. Notwithstanding these efforts, the fact remains that her present financial resources are such that repayment of her student loans would impose an undue hardship.

Finally, the Court turns to the question of the Debtor's reasonably reliable future financial resources. This question can be quite difficult because, as this Court has noted, "Congress has created an imperfect situation where courts have to guess what the future will bring . . . ." *In re Smith*, 324 B.R. 16, 19 (Bankr. D. Mass. 2005). First, the Court considers the Debtor's novel and patent application. The evidence established that, despite several efforts, the Debtor has been unable to sell the novel. The Debtor has also not received a response to her patent application. The Debtor testified that she hopes that she will be able to sell the patent if it is approved, but the Court was presented with only a vague description of her invention and is unable to assign any value to it. ECMC did not produce any evidence to suggest that the novel and patent would ever produce any income. While the novel and patent application certainly establish that the Debtor has made good faith efforts to earn the income necessary to repay her student loans, they are far too speculative to be characterized as reasonably reliable future financial resources.

This leaves the Court to determine whether the Debtor has any reasonable prospect of finding gainful employment that would provide her with the financial resources necessary to repay her student loans in the "foreseeable future." *In re Hicks*, 331 B.R. 18, 27-28 (Bankr. D. Mass. 2005). There are several factors that lead the Court to conclude that there is no such reasonable prospect, and the Debtor's inability to find employment is likely to persist. *Cf. Denittis*, 362 B.R. at 65-67 (noting that the debtor's multiple sclerosis was not likely to change and "will *continue* to impair her ability to find employment."). First, the Court cannot ignore the

9

fact that the Debtor is 64 years of age.  *See In re McGinnis*, 289 B.R. 257, 266 (Bankr. M.D. Ga. 2003) (stating that "it would be foolish to ignore the effect her age will have, not only on her job prospects, but also on the number of years she will be able to remain in the work force."); *In re Dufresne*, 341 B.R. 391, 395 (Bankr. D. Mass. 2006) (stating that age is a factor to be considered in the undue hardship analysis).  Her age has clearly had an adverse impact on her ability to find employment and significantly dims the likelihood that she will find employment in the foreseeable future.  The current sour economy will only compound this problem.  Second, the Court finds that the Debtor's current inability to find employment reliably indicates that she will also encounter extreme difficulty finding employment in the foreseeable future.  This is especially true in light of the fact that the Debtor conducted a broad employment search.  ECMC put in no evidence to infer that the Debtor's job prospects will improve.

      Third, the Debtor only has experience in one very specialized field; she has worked as a legal secretary for patent prosecution attorneys.  Furthermore, this experience spanned only five years.  With such limited experience she is a far less likely to be selected for a position than other applicants who have many years of diverse experience.  The Debtor's limited job experience makes her future employment prospects bleak, and it would be extremely difficult to penetrate a new profession at the age of 64.  Finally, the Debtor has been unable to pass the bar examination.  She was not close to passing on her three attempts and has no plans of taking the exam a fourth time.  In her closing argument, the Debtor candidly stated that she could conceivably repay her student loans if she could pass the bar exam and find a job working as an attorney.   Unfortunately, that is not the case.  The Debtor has been unable to pass the bar exam and it is clear to the Court that a fourth attempt would not bring a different result.  Therefore, her

10

inability to pass the bar exam has rendered her prospects of finding employment in the legal profession non-existent.

Although the gloomy economic climate has undoubtedly had a dramatic impact on the job market, the Court concludes that, given her circumstances, the Debtor will still not have a reasonable prospect of finding gainful employment when the economy rebounds. Given her age, limited work experience, demonstrated inability to find "any kind" of secretarial, receptionist, or contract manager work, and her inability to pass the bar exam, this Court concludes that the repayment of her student loans would impose an undue hardship.

## Conclusion

For the foregoing reasons the Court concludes that repayment of the Debtor's student loans would cause an undue hardship and shall be discharged pursuant to 11 U.S.C. 523(a)(8).

A separate order will issue.


Dated: January 13, 2009                                By the Court,

                                                       *Joel B. Rosenthal*

                                                       _____
                                                       Joel B. Rosenthal
                                                       United States Bankruptcy Judge

11